Johnston, Chancellor.
The defendants contend that the latter clause supercedes the former, and that they being entitled under it have a right to the slave George, giving to them in it, in exclusion of the plaintiff, who claims under the superceded clause.
The doctrine is plainly laid down in the older authorities, that a subsequent clause in a will shall prevail over a prior clause. But it was said by the plaintiff’s counsel, Mr. *Blanding, that although the older authorities are to this effect, the Courts have subsequently come to a conclusion, that in such cases the clauses shall stand together.' Upon looking at the authorities quoted, and others, I find that they use the language attributed to them.
They argue that altnough the last of two wills supercedes the first, yet that there is a want of the analogy supposed by the early authorities between the cases of two wills, and the eases of two clauses of the same will. Swin. part 7, ch. 21. That in the case of two wills, the testator assents to them separately, and that to which he last assents is his last will: but that in the case of two separate clauses of the same will, he does not assent to either before the other, but to both together as an unity, after finishing the whole will. 2 Atk. 374. That he does not assent to the clauses of the will, as clauses, but to the whole will consisting of clauses. 3 Atk. 493. That it is true, that in revolving in his mind the subjects embraced in the will, he can only give them a successive consideration ; but that the assent which he gives, after all the details are arranged, is the only evidence we can have that he intended the paper to stand as his will. That in assenting he has contemplated the provisions as a whole, not only separately but in their relation to each other, and pronounced his work good That the power to do this, is what is called a sound and disposing mind and memory.
The case was argued before me on the same point, and in the same way. Upon looking at the authorities I confess I was struck with the plausibility, and at first came to the conclusion that the old doctrine had been over-ruled. But further reflection has satisfied me that properly understood, and as to cases where it has a real application, it has not been. And I am further satisfied that in the cases and authorities where the arguments were used which I have recited, the question which, from the language held, appeared to have been settled, never occurred ; and that in them, as in this, an immaterial question was argued. '
The ancient doctrine properly understood, is not that all subsequent clauses shall prevail over the prior clauses embracing the same subjects of disposition. But it is, that where a subsequent clause either directly in terms repeals a former, *or contains provisions so inconsistent with it, that it cannot stand with it and by implication repeals it, it shall prevail over it.
Now the reason given by the authorities referred to, why the clauses should prevail together, is that the testator has assented to both together, and to one as well as to the other; and that reason is a good one where *248 it can apply, as for instance, where the clauses can be made to stand together. But will any body contend, that when a testator has said in a subsequent clause, “ whereas I bequeathed so and so in a prior clause, now I do hereby revoke the legacies and give them to other persons”— that in such a case the legatees shall concur and both the clauses stand, simply because the testator assents to his whole will at once ? Yet the reasoning goes that length. If the repeal is indirect, by reason of inconsistency or incongruity, is it not as much a repeal as if it were a repeal in direct terms ? The Court, to be sure, would be bound to let the former clause stand, if by any construction it could be made to stand. But if after resorting to all the sound rules of construction the clauses be found too incongruous to prevail together, the latter must be regarded as a repeal of the former, notwithstanding both may have been apparently assented to at the final execution of the will.
Accordingly the cases in which the authorities seem to consider the old doctrines overruled, are cases where in fact it never applied, and where the question really ought to have been, whether the prior clauses could be made to stand with the subsequent, or whether the latter were not so inconsistent with the former as to indirectly repeal them. Let us resort to this inquiry.
Where the conflict is merely between detached words or phrases in a testamentary paper, the rule is to bring the conflicting phrases and words together, and ascertain how the testator intended his expressions thus scattered to affect and modify each other : and in doing this I am not aware that I am warranted in saying that it was ever held, but I incline to believe, that if it be found, that if effect cannot be given to all, those must be rejected which are first in order. But that if by modification any effect can be given to them, it must be *given, and that thus modifying each other the whole of the expressions will be taken together, as an exponent of the testator’s intention. This is a rule of construction. I know of no reason why the rule of construction should be different where the conflict is between detached clauses, from what it is where the conflict is between detached expressions.
In this rule by which detached and conflicting expressions are brought together for construction, there is a real want of analogy between the cases of two wills, and the different parts of the same will; although the want of analogy on the point of assent was, I think, a mere supposition. Where there are two conflicting wills there is never any attempt to bring them together for the purpose of reconciling them, but the latter always operates to the extent of the difference between them, as a direct repeal of the former. It is different where the several parts of the same will conflict.
Let us now bring the two clauses of this will in question, together, and see if there be any difficulty. There would have been no difficulty, if the testator, making use of only one clause, had said, “I give my slave George to my son William and my daughter Jane B.,” limiting over the share of William, so and so, and the share of Jane in another way. If he had, making use of only one clause, said, “ I give my slave George to my son William — and I give my slave George to my daughter Jane B.” &c., would this, although more at length, have amounted to any thing more than filling out the words understood in the sentence I have just *249 before put into bis mouth ; which, though omitted in that sentence, are really referred to by the copulative conjunction ? Would it have amounted to any thing more or less than a gift of George to the one and to the other of his children — that is, to both ? Now if this would have been the undeniable effect of using such expressions in one clause, is there any magic to change that effect, in his employing two clauses instead one ?
It was argued by Mr. Mayrant, fofthe defendants, that the limitations over made the bequests inconsistent — that the clauses could not stand together, on that account; and that the latter clause must be preferred. If the limitations over *are so inconsistent in enjoyment, that they cannot stand together, or with the interests of the particular legatees, there is no reason that the particular legatees should not be made to concur until the time that the limitations shall come to take effect. If then they cannot be brought to concur, a partition by sale would be ordered, or the question would then arise between the two clauses, as to the preference to be given to them.
But I see no such incongruity as is supposed. The respective remainders limited over, are precisely of the same extent as the particular estates to which they are attached. One line of remainder-men is entitled to what is given to the plaintiff, and another to what is given to Mrs. Boon. Although the plaintiff and Mrs. Boone are jointly interested, yet upon the death of either, that tenancy is severed, and the remainder-men of his or her line become entitled to his ‘or lief share. They may, if they please, concur in the enjoyment, as tenants in common with the survivor; or if they cannot concur, they can have partition by sale.
If was argued, again, that the subject-matter of the bequest could not be enjoyed by more than one, and that, therefore, the legatees could not concur. That I do not perceive. A slave may be hired out, or he may labor for the joint benefit of a plurality, of persons. But there are cases in which a joint enjoyment of the legacy cannot obtain. What then ? If the legatees cannot concur, they must partition by sale. But the objection is too extensive. I will take the strongest case put by the counsel. Suppose that the Pitt diamond, or some exquisite painting, be given to two persons in two different clauses of a will. If it be contended that the latter clause shall prevail over the former, it must be on the ground that the bequest is not susceptible of joint-enjoyment. If that reason be allowed to prevail, upon the same reason, if such legacy were given to the same persons in the same clause, it must be declared void, or the will must be violated by awarding to one .of them in exclusion of the other.
I apprehend, that in such a case (and so also in this *case) unless the legatees can be brought to concur in the enjoyment or disposition of the article bequeathed to them, it must, being incapable of division, be sold, and the avails distributed. It is no argument against this, to say, that an article, whose chief value consists in taste, would be sacrificed by sale. That is a matter exclusiveiy for the consideration of testators, and for the reflection of legatees. — The same difficulty would exist, whether it be disposed of in two clauses of a will, or in one only. Nor do I see reason to fear sacrifices. Granting that besides the legatees *250 the whole community did not contain one individual of taste, to appreciate the legacy, I imagine the legatees themselves would prove competitors to each other, to the extent of the value they set on it; and that neither would suffer himself to be deprived of it, until he received a price at least as gratifying.
W. and C. Mayrant, for the appellant.
Blanding, contra.
I must, therefore, conclude in favor of the plaintiff’s construction of the will.
It is ordered and decreed, that the defendants do deliver up the slave, George, the subject of this suit, to the Commissioner, who shall, at Sumter Court House, on the first Monday of the next month after he shall have received him, or on the first convenient sale day thereafter, after having given as least fifteen days public notice thereof, to proceed to sell him, on a credit of one year, taking bond with good personal security, and a mortgage of the slave, to secure the purchase money. — That upon the collection of the proceeds of the sale, the one-half thereof be paid to the plaintiff, to be held by him subject to the same limitations and conditions as those upon which the -said slave was bequeathed to him by the will of John B. Fraser; and that the other half thereof be paid over to the defendant, Thomas Boone, in right of his wife, Jane B., to be held subject to the same limitations and conditions as those on which the said slave was bequeathed to the said Jane B., by the will of the said testator.
And it is further ordered and decreed, that the said Thomas Boone do pay the costs of this suit.
From this 'decree the defendants appealed, on the grounds:
1.*Because, where there are inconsistent clauses of a will disposing of the same property, the last is a repeal of the first.
2. Because the limitations contained in the two clauses of the will render them inconsistent and incongruous with each other, and the last ought to operate, for this reason, as a repeal of the first.
3. Because, in order to give effect to both clauses, the decree defeats the interest of the remainder-men.
Johnson, J.
I have entertained very great doubts about the leading question in this case, and I confess that the very able argument of the Chancellor, in support of the view which he has taken, has, in some sort, shaken the confidence in the early and abiding impression made on my mind, by the maxim of Lord Coke, that “ the first grant and the last will, is'of the greatest force.” The question, so far as I know, is open in our own Courts; and the great diversity of opinion on the subject, leaves the Court at liberty to adopt that rule which is most consistent with sound policy, and the general principles of law. The annotator of Lord Coke says, “ that there is great contrariety in the books, on the effect of two inconsistent devises in the same will. Some hold, with Lord Coke, that the second devise revokes the first, Plow, 541, note; others, that both are void on account of repugnancy, (Ow. 84); but that the opinion of the greatest number of authorities is, that the devisees shall take in moieties.” Co. Lit. 112, b. note, 144.
The question is simply one of construction. What did the testator *251 intend ? and the difficulty consists in the selection of the proper rule. That adopted by the Chancellor has for its support apparent equity ; but that is opposed, according to iny view of it, by the consideration, that in the universal application, inequality would be produced. To illustrate this, I would take the case put by the Chancellor, of the family picture, and suppose that it had been given in one clause of the will to a stranger, and *in another to a near and much valued relation. In the canvass itself there is no intrinsic value, and if the stranger takes the entire thing, he gets nothing of value ; if the relative, he gets that which to him is invaluable, no price would purchase it. If it be sold for partition, the stranger takes advantage of the better feelings of the relative, and forces him to pay a great price for the one-half of that which would be worth nothing to the stranger. And the same inequality would arise, in a greater or less degree, in the bequest of almost everything incapable of a partition in specie.
In resolving a question of doubtful intention, the Court ought to adopt that conclusion which is the most reasonable and probable; and I think I may refer to the experience of every member of th’e profession, to support me in the position, that no case has occurred, in which, judging from extrinsic circumstances, a testator intending to divide his property between two or more, has given the whole to each severally. The terms necessary to express the intention are so common-place and familiar, that no testator or scrivener, however ignorant or illiterate, could be at a loss for them, and when that was intended, it would be expressed in some form or other. Whilst, therefore, we are unable in cases of inconsistent devises, to fix with certainty the meaning of the testator, it may be affirmed with great confidence, that he did not intend that the devisees should take equally.
This view tends very strongly to the conclusion, that both ought to be rejected, on account of their repugnancy; and yet it is certain that the testator intended to dispose of the thing devised, and here the rule of Lord Coke is most opportunely introduced. Not that it furnishes a certain guide to the intention of the testator; but valuable, on account of its simplicity and the facility of its application ; and it certainly loses nothing of its force and authority, by Lord Hardwicke’s dissent to the reasoning of the modern cases opposed to it, in Ulrich v. Litchfield, 2 Atk. 374.
There is another consideration which very strongly inclines my judgment in favor of this rule. It has been, as ^before remarked, fixed in my mind, by very early impressions. I believe, too, that it has been the current opinion of the profession, and I think that is the understanding of the community. One case of the sort has occurred within my own observation, which was precisely like this, (inconsistent bequests of a negro) and was adjusted by this rule; and it is not improbable that many others have occurred, and have not been brought into litigation on account of the supposed propriety of the rulé.
It is therefore ordered and decreed, that the decree of the Circuit Court be reversed, and that the complainant’s bill be dismissed, with costs.
O’Neall and Harper, Js., concurred.